## TEWKESBURY v. BENNETT.

**Warranty:** REPRESENTATIONS · IN SALE OF PERSONAL PROPERTY. To constitute a warranty upon the ground of false representations on the part of the seller, there must have been a distinct assertion or affirmation of quality made during the negotiation, and which, it may be supposed, was intended to and did cause the sale. No warranty will be implied from remarks which may be construed as praise simply, or commendation of the thing sold.

| 31 | 83 |
| 87 | 123 |
| 31 | 83 |
| 127 | 698 |
| 31 | 83 |
| f140 | 735 |

*Appeal from Fremont Circuit Court.*

SATURDAY, JANUARY 28.

ACTION upon a promissory note given in consideration of a flock of sheep. Defense, a counterclaim, based upon an alleged breach of warranty of soundness. Trial by the

court. Judgment for plaintiff. Defendant appeals. The necessary facts are stated in the opinion.

*Watkins & Williams* for the appellant.

*Cornish & Munroe* and *Withrow & Wright* for the appellee.

DAY, J.—I. A consideration of the numerous errors presented, in an order different from that of their assignment, will be conducive of clearness and brevity. The question which naturally presents itself for our primary consideration is, whether the colloquy between the parties to the contract amounted to a warranty, on the part of plaintiff, of the soundness of the sheep. The testimony bearing upon this branch of the case is quite brief. A short time before the purchase plaintiff proposed to sell defendant the sheep. Defendant asked "if the sheep were healthy; if there was any disease among them." The plaintiff "said they appeared to be healthy, and were doing well." The defendant sent his father, David Bennett, to look at the sheep, and to make a trade for them if he thought best. David Bennett, upon looking at the sheep, saw that they were thin in flesh, and "told Tewkesbury he did not want them, and would not trade with him." Tewkesbury "represented the sheep to be well and doing well. He said that they were thin on account of being kept in the yard and not herded well." This is the substance of the testimony on the part of the defendant with reference to a warranty. The plaintiff testified that he did not warrant to David Bennett, or any one else, that the sheep were sound, further than that he believed they were healthy; and that he *did* so believe.

Remarks which may be construed as simple praise or commendation imply no warranty, but any distinct assertion or affirmation of quality, made by the owner during a

negotiation for the sale of a chattel, which it may be supposed was intended to cause the sale, and was operative in causing it, will be regarded either as implying or as constituting a warranty. 1 Pars. on Cont. (3d ed.) 464, and cases cited in note *o*.

The affirmation must be made to assure the buyer of the fact asserted, and induce him to make the purchase; and must be so received and relied on by him. *Ender* v. *Scott*, 11 Ill. 35; *Humphreys* v. *Comline*, 8 Black. 516. The question, whether any particular affirmation amounts to a warranty, when there is no warranty in terms, is for the jury. The criterion is the understanding of the parties, and it is for the jury to say whether the language used was intended as a mere expression of opinion or belief, or as a representation. *Duffee* v. *Mason*, 8 Cow. 25; *Chapman* v. *Murch*, 19 Johns. 290; *House* v. *Fort*, 4 Black. 293. In the case last cited, which was an action upon an alleged breach of warranty of the soundness of a horse, it was held that the court below improperly refused to instruct the jury that "if the defendant at the time of the exchange, on being questioned as to the horse's eyes, said they were as good as any horse's eyes in the world, this did not amount to a warranty."

The court said "there was no warranty in terms, and if, by the language used, a warranty was intended, that intention was to be proved. The language, as it is presented in the instruction, is not of itself a warranty, express or implied." The general judgment of the court in favor of plaintiff, for the amount of the note, was predicated upon the fact that a warranty was not established. This finding of the court is to be regarded by us as a verdict of a jury. A majority of the court are of opinion that it is in accordance with the preponderance of the testimony. One member of the court, Mr. Justice Miller, would resolve the question differently, if an original one. But we unite in the opinion that it is not so opposed to the weight of evi-

dence, as to justify our interference. There is no evidence which would lead to the conclusion that the representation was fraudulently made.

II. The plaintiff testified as follows: "Mr. Tewkesbury told me when I first saw him that the bucks had not been to the ewes. This was about the 10th or 12th of December, 1867. In January and February they commenced to have lambs; they had between thirty and fifty in those months; out of all the lot we saved but one." This testimony was not contradicted. Defendant claims that he has at least established a warranty as to this branch of the case. The testimony however does not show that this representation was intended as a warranty, nor that it was relied upon as such; nor is there any evidence that it was fraudulently made. We think the court rightly found that the representation did not amount to a warranty.

III. Various errors are assigned upon the rejection of certain testimony bearing upon the measure of damages. As no warranty was established, the question of damage did not arise, and the ruling of the court, whether correct or not, worked the defendant no prejudice, and constitutes no ground for a reversal. See cases cited in Dillon's Digest, 419.

Affirmed.